## BECKER v YOUNGSTOWN (city)

Ohio Appeals, 7th Dist, Mahoning Co

Decided Nov 24, 1936

Hahn, Williams & Shermer, Youngstown for appellee.

Vern B. Thomas, Youngstown and Wm. E. Lewis, Youngstown, for appellant.

## OPINION

By NICHOLS, J.

Harold C. Becker instituted his action in the Common Pleas Court of Mahoning County against the city of Youngstown, and in his amended petition charged that the defendant is a municipal corporation duly and legally organized and existing by virtue of the laws of the state of Ohio, and that the defendant constructed and maintained a sidewalk in front of 110 West

Wood Street in the city, which was much traveled by the public on foot; that on the 10th day of August, 1935, there was and for many years prior thereto there had been an opening in the north sidewalk, being a circular opening or hole in the top of which a removable circular flat iron covering or lid was adjusted, resting on a flange or shoulder made for the purpose in the sidewalk, and the top of the covering or lid was level with the surface and was a part of the sidewalk; that for some time prior to the 10th day of August, 1933, this circular flange in which the lid was inserted had been broken and allowed to remain in the sidewalk in five sections and there maintained in an unsafe and dangerous condition, in that the coal hole was improperly, unskillfully and negligently constructed, maintained, suffered and permitted to remain in the sidewalk; that the flange being in five broken sections was moveable and loose, and that the cover of the coal hole was too small to fit into the five broken sections of the flange, causing the cover to be in a loose condition when put in its place, and so that it did not fit closely or snugly into the opening; that the cover did not have any means or appliances on the under side thereof, fitting into the stone to keep it in place and from slipping out of the opening, and was liable to turn or tilt or become displaced by persons stepping upon or walking over the same, affording an unsafe and insecure footing to persons passing over the same; that the defendant negligently and carelessly permitted this iron cover or lid to be and remain from the time the flange was broken in five sections, to-wit, at least six to eight months prior to the 10th day of August, 1933, and up to the time herein complained of, in the aforesaid condition.

The plaintiff further alleged that it was the duty of the defendant to place in this opening a good and sufficient flange and covering or lid of the proper size, or cause the same to be properly, carefully and sufficiently covered so that it would rest solidly on the same and not slip from its place or turn or tilt when stepped on by pedestrians, and secured in such a manner as to prevent injury to anyone passing over it, so that the sidewalk would be reasonably safe for use.

Plaintiff further alleged that the failure of the city to perform this duty directly and proximately caused and brought about certain injuries to plaintiff; that the defendant, for a long time, knew of the existence of the broken flange and of the loose, unsafe and insecure cover or lid; that while plaintiff was lawfully walking along and over this sidewalk, on the 10th day of August, 1933, at about 10:30 A. M., he stepped on the cover or lid and that it instantly turned or tilted, or slipped out of place, by reason of which he was suddenly thrown and caused to fall and whereby he received certain injuries, for which he prayed damages in the sum of $50,000.00.

Plaintiff further alleged that at and prior to the occurrence of the accident, there were certain ordinances of the city of Youngstown in full force and effect, one of which ordinances provided that the width of the sidewalk on Wood Street at the place in question shall be fifteen feet wide; another of which ordinances approved certain recommendations of the Planning Commission as to streets in the city of Youngstown; another of which ordinances provided for set-back building lines, and another of which ordinances, commonly known as the "zoning law", regulated the erection or alteration of buildings in the city according to building line maps for commercial and industrial districts.

We have referred rather fully to the allegations of the petition so as to definitely show that the petition is based upon the claim that plaintiff's injuries were occasioned by the failure of the city to keep in repair and free from nuisance a sidewalk alleged to have been constructed by it and which it permitted to become in a dangerous condition and which it failed to repair. While there is much repetition of the above allegations in the plaintiff's petition, there is nothing therein which alleges or admits that the coal hole in question was on privately owned property upon which. to the knowledge of the defendant, a dangerous condition existed by reason of which, after notice, there was a duty of the city to erect barriers for the purpose of preventing those lawfully using the sidewalk located on the city street from falling into or being injured thereby.

The answer of the city admitted its corporate organization and existence; that Wood Street is a public street of the city, and admitted the passage of the ordinances referred to in plaintiff's petition, and for its first defense denied all other allegations of the amended petition.

For its second defense, the city alleged that if it should transpire from the trial that the plaintiff was injured as alleged in his amended petition, then the plaintiff

himself was guilty of carelessness, inattention and want of ordinary care under the circumstances in that he failed and neglected to use his senses of sight and observation, and failed to direct his movements and foot steps so as to avoid coming upon and stepping into the coal hole or upon the covering or lid, and in that he deviated from the usual course and ordinary mode of pedestrian travel upon Wood Street and in heedlessly and for his own convenience proceeding beyond the street limits of the municipality.

For its third defense the city alleged that the place where the plaintiff claims to have fallen is private property without the street limits of the municipality; that this private property has never been granted by its owner to the defendant; nor has the property ever been devoted to public use; that the land, including the circular opening or hole with the alleged circular flat iron covering or lid thereon was used exclusively by the owner thereof for the benefit of the building situated near or adjoining thereto; that this land, including the circular opening, has never been dedicated, either expressly or by implication, to public use; neither has the public nor this defendant ever accepted the same; that this defendant has never exercised any jurisdiction, control or supervision over the land wherein this coal hole or circular opening is located.

For its further defense the defendant avers that it did not construct or maintain the circular opening or hole with the alleged circular flat iron covering or lid thereon; that the owner of abutting property constructed and maintained the same upon his or its property for its or his exclusive convenience and private use, and exercised exclusive dominion and control over the same, and if the coal hole was defectively constructed or maintained, the abutting owner is responsible therefor and not this defendant.

No reply was filed by the plaintiff to the answer of the defendant, and upon the trial, at the conclusion of the opening statement of counsel for the plaintiff, the following colloquy took place between counsel for the respective parties, as shown by the following:

"MR. STANKIEWICZ: (Counsel for the city) I would like to inquire for our purpose of Mr. Hahn (counsel for the plaintiff) at this time whether he claims this coal bin was put in within or without the city lines.

MR. HAHN: Why, city lines, of course.

MR. STANKIEWICZ: Within the city lines in the street limits?

MR. HAHN: Within the public sidewalk of the city of Youngstown."

It therefore appear that to a recovery by the plaintiff in this action, it was necessary that the plaintiff █ establish that the land whereon the coal hole in question was located was not upon privately owned property but was upon or in the public sidewalk of the city of Youngstown so as to create a duty upon the part of the city to keep the sidewalk in repair and free from nuisance, and further that the defendant had knowledge, either actual or constructive, of the defective condition of the public sidewalk under its care and control, and failed in the duty imposed by statute.

At the conclusion of all the evidence offered on behalf of the plaintiff, the defendant moved for a directed verdict in its favor, which motion was overruled by the trial court and exceptions noted. At the conclusion of all the evidence, the defendant again moved for a directed verdict in its favor, which motion was taken by the court under consideration, and thereupon the plaintiff moved for directed verdict in his favor upon the issue of the defendant's liability and that the cause be submitted to the jury for the sole purpose of determining the amount of plaintiff's damages. Whereupon the record shows the following:

"COURT: Motion of the defendant is overruled with exceptions noted to the defendant, and motion of plaintiff is sustained with exceptions noted to the defendant.
"* * *

"COURT: The only issue for the jury now is the question of the amount."

The cause proceeded to argument on the question of damages and after the charge of the court upon this question alone the jury returned a verdict in favor of the plaintiff in the sum of $10,000. Motion for a new trial was duly filed and overruled and judgment entered on the verdict.

The defendant prosecutes appeal of law to this court. In brief and oral argument counsel for defendant tell us that they do not want a reversal of this case but seek final judgment of this court, it being con-

tended that there is no evidence in the record to sustain a verdict against the city, and that it was the duty of the trial court to direct a verdict in favor of the defendant upon its motions at the conclusion of all the evidence of the plaintiff or at the conclusion of all the evidence. A motion had likewise been made by defendant for a directed verdict in its favor upon plaintiff's opening statement to the jury. It is apparent from an examination of the record that only a portion of the opening statement of counsel for the plaintiff is before us, and we are, therefore, unable to give consideration to the claim that this preliminary motion should have been sustained.

There is serious question whether the trial court gave to the defendant any opportunity to withdraw its motion for directed verdict before passing upon the motion of plaintiff to submit the case to the jury upon the question of damages only. It is noted that defendant's motion and plaintiff's motion were passed upon at the same time—almost, it may be said, in the same breath, but we do not give further consideration to this question for the reason that we could only reverse this case and not grant final judgment in favor of the plaintiff even though we should find that the trial court erred in that respect.

In passing upon the motions of defendant for directed verdict at the conclusion of plaintiff's evidence and at the conclusion of all the evidence in the case, the court should have directed a verdict for defendant if upon any essential issue reasonable minds, after giving to the evidence construction most favorable to plaintiff, must reasonably come to conclusion adverse to plaintiff.

Considering the allegations of plaintiff's petition and the statements made by counsel for plaintiff in his opening statement to the jury, one of the essential issues upon which the plaintiff must have produced evidence from which reasonable minds might reasonably reach different conclusions was the question whether or not the land whereon was located the alleged defective coal hole rim and cover was land which had become a part of the public street or sidewalk, that is, land which had been duly dedicated to the city for street or sidewalk purposes and which dedication had been duly accepted by the city. It is not claimed that any dedication of this strip of land was accepted by the city by ordinance specially passed for such pur-

pose, as provided in §3723 GC, and from the conclusions we have reached, it is not necessary for us to determine whether this section has application and we may assume that such dedication and acceptance may be as at common law.

But to constitute the land in question a part of the city street or sidewalk, both dedication and acceptance must be shown as to the strip six feet wide and fifty feet long, lying between the north line of Wood Street and a building owned by the Business Realty Company which was constructed in 1926 on a so-called set-back line in accordance with the restrictions contained in a previously enacted ordinance of the city of Youngstown.

From the record it appears that in the year 1920 the council of the city of Youngstown by ordinance established a Planning Commission under authority of §4366-1-2-3-4-5-6 GC. In the year 1921 the council of the city adopted ordinance number 24705 approving certain recommendations as to streets made by the Planning Commission of the city of Youngstown, Ohio. This ordinance recited that:

"WHEREAS, The Planning Commission of the City of Youngstown, Ohio, has made certain recommendations as to the width of certain streets in the city of Youngstown, and as to the building lines to be established on certain streets; and,

"WHEREAS, a more full and complete record of such proceedings may be found in the minutes of said Planning Commission;

"NOW, THEREFORE, Be it ordained ***** that the recommendations of the Planning Commission as set forth in an itemized list attached hereto and marked 'Exhibit A', ***** be and the same are hereby approved."

"Exhibit A", referred to in the above ordinance, shows that "building lines on Wood Street from Belmont Avenue to Walnut Street be and the same are hereby established six feet north of the present north line of said Wood Street and seventy-two feet south of the present north line of said Wood Street." Nothing contained in this ordinance or the exhibit annexed thereto and made a part hereof provides for the widening of Wood Street, but only for the establishment of the so-called set-back building lines.

Attached to the record as "Plaintiff's Exhibit C" is a report of the Planning Commission to the city council under date of December 1, 1923, from which it appears that the Planning Commission had theretofore recommended set-back building lines on a number of the streets of the city including Wood Street, and the report states that these building lines "have been conformed with except where it would work a real hardship by so doing as when a builder would have to place his building back of existing structures. In such cases the Planning Commission has entered into an agreement by which the owner of a lot has been allowed to build out to the present street line, but agreeing to remove that part of the structure extending beyond the building line, at his expense, upon demand made by the city."

This report also shows that the Planning Commission had recommended that certain streets of the city be "widened." Wood Street is not one of those recommended to be widened.

Another of the ordinances of the city, adopted before Business Realty Company constructed its building, was one providing that the sidewalks upon Wood Street be fifteen feet in width. The record discloses that in front of Business Realty Company's building a sidewalk had been constructed by the Realty Company the entire distance from its building to the curb of the street, a total width of twenty-one feet, thus providing the fifteen foot sidewalk established by the ordinance and an additional six feet covering the strip of land lying between the north line of the street and the set-back building line. The record discloses that the owner of the building constructed within the limits of the six foot strip a coal hole in which an iron rim was set in the cement and with an iron covering, the rim and covering being level with the sidewalk. There is no evidence in the record that the city had anything to do with or authorized in any manner the construction of this coal hole rim or covering. This coal hole was used exclusively by the owner of the building for the purpose of putting coal in the basement to heat the building. The owner of the building had also constructed within the limits of the six foot strip iron trap doors level with the sidewalk, with steps thereunder leading to the basement of the building which were used exclusively by the owner of the building and its tenants.

Plaintiff offered in evidence that part of city ordinance number 33295 which was adopted October 28, 1929, showing the classification of Wood Street as being in Commercial B territory, the title of this ordinance being "An ordinance to regulate, restrict and limit in the interest of the public health, safety, convenience, comfort, prosperity and general welfare, the uses and the locations of buildings and other structures and premises to be used for trade, industry, residence or other specified uses, the height, bulk and location of buildings and other structures hereafter erected or altered including the lot area, number family, set-back and building lines and the area of yards, courts and other open spaces and for said purposes to divide the city into zones or districts of such particular shape and area as are deemed best suited to carry out said purpose and to provide a method of administration and to provide penalties for the violation of the within provisions."

We find and hold that none of the ordinances of the city admitted in evidence on behalf of the plaintiff had effect to show an appropriation by the city for street or sidewalk purposes or for any other purpose of any part of the lot owned by Business Realty Company upon which it constructed its building upon the six foot set-back building line provided for in one of the ordinances and in the report of the Planning Commission.

Plaintiff produced as a witness in his behalf Mr. Luther Fawcett, who was a member of the Planning Commission at the time the Commission made its report to the council of the city. On direct examination this witness was asked "whether or not one of the primary objects of creating a set-back line to the north of six feet was for the purpose at some future date to widen Wood Street." The witness answered, "Yes, with the qualification, the set-back line was 'established so that it would be possible to widen the street in the future if necessary, but it was not the entire object of the set-back line."

Another witness for the plaintiff testified that "the purpose of a set-back line ***** allows for a future widening of the street if found necessary. It also has a tendency to make the property on the square, more uniform and is more approachable, the egress and ingress is sometimes improved by a set-back line, and, of course, eventually increases values of the property when it does improve the property as a whole."

Another witness for plaintiff testified

that "the zoning ordinance was to enable the citizens of Youngstown to more fully or most fully, as far as we could go, enjoy all of the benefits of light and air and traffic conditions, and all of these were taken into account in all of the widening; but I believe I could say that the primary object in the down town streets and the main arteries was so that we could eventually widen it for traffic."

The record discloses that there is nothing on the sidewalk in front of the Business Realty Company's building to indicate whether a person using that sidewalk is on one side or the other side of the north line of Wood Street, the whole twenty-one feet between the building and the curb being constructed of concrete and upon the same level. We do not find anything in the record which required the owner of the building or the lot upon which the building was located to construct any sidewalk upon the sixty foot strip, and there is nothing in the record indicating that the owner did not have full ownership and control of the six foot strip lying between the fifteen foot sidewalk and the building. There is no evidence in the record showing that the city had directed a sidewalk to be constructed on this six foot strip; neither is there any evidence in the record indicating that the city ever exercised any incident of ownership or control of this six foot strip, the record plainly disclosing that the owner of the building constructed the sidewalk thereon, constructed the coal hole and the trap door, and maintained the same for its own use and for the benefit of its tenants.

The record does disclose that the public generally, or at least that part of the public who had business with the tenants of the building or who desired to inspect the goods, wares and merchandise displayed in the store windows of the building used the concrete walk on this six foot strip ever since the building and walk were constructed by the owner.

We are cited by counsel for plaintiff to the case of **Penquite v Lawrence, 11 Oh St 274,** as authority that such user is at least some evidence of probative value as showing an intention on the part of the owner to dedicate the strip, and therefore the question was for the jury.

The syllabus in Penquite vs Lawrence, supra, is as follows:

"A mere silent acquiescence of the owner of land, in the use of a public road across

it, for any period less than twenty-one years, is not **conclusive proof** of a dedication thereof to public uses, but only **evidence,** more or less significant, tending to prove such dedication. Such uninterrupted use for the period of nine years, coupled with other circumstances indicating an intention on the part of the owner to dedicate it, may, if satisfactory to the jury, warrant it in finding such dedication; but does not, in and of itself, justify the court **in assuming the fact of a dedication."**

That case is clearly distinguished from the case at bar. There the issue was between individuals; here the issue was whether the land in question had become a part of the city street or sidewalk so as to charge the city with the duty to keep the same in repair and free from nuisance.

"1. To show the establishment of a street by a common law dedication, it is essential to prove clearly that the owner of the land intended to donate it for that use, and to prove also an acceptance."

**Railroad Company v Roseville, 78 Oh St 108.**

From the opinion in the last cited case we quote:

"It is well settled that in order to deprive the owner of his property by a common law dedication it must clearly appear not only that he intended to and did give it to the public but also that the gift was accepted. ****

"Furthermore, an acceptance on the part of the village is not shown. It is said that the late cases rule that an acceptance may be implied from public user, upon the assumption that the inhabitants are the principal and the corporate officials merely its agents, and that the principal may himself do what he might have done through the intervention of an agent. Elliott on Roads and Streets (2nd Edition), Section 150."

******

"In this state, however, local subdivisions, such as counties and towns, are themselves merely agencies of the state, possessing only delegated powers and the prescribed mode or manner of exercising them is the measure of the power. They can act only by their officers, and the duty to care for the roads and streets and the liability

for damages for neglecting to perform the duty can not be imposed upon them by proof of user by the public but only by an acceptance by the authorities whose duty it would be to care for the road or the street if it should be established."

The issue whether the strip of land in question was a part of the city street or sidewalk is not made by proof of either dedication or acceptance but by proof of both. "Dedication" and "acceptance" are the elements of the "issue" whether the coal hole was located in the city street or sidewalk.

There is nothing in the record showing that the use of this strip by the public was other than permissive.

"2. An intention by a railroad company to dedicate a street is not clearly shown by proof that a way over its tracks and unenclosed lands had been used for about forty years by the public, when during the entire time the way was maintained by the company, and was used by its patrons, and the use by the public was merely permissive.

"3. An acceptance, by a city or village, of the dedication of a street cannot be shown by proof of user by the public, but it is essential that acts of acceptance by its proper officials be shown."

Railroad Company v Roseville, supra.

In the spring of 1933, about four months previous to plaintiff's injuries, a truck load of coal, purchased by the owner of the building, backed on to the sidewalk on the six foot strip of land and broke the iron rim of the coal hole into five pieces. Plaintiff's own testimony shows that the day this rim was broken the owner of the building, by its janitor, repaired this rim by setting the same in concrete. An officer of the Realty Company testified that after the janitor repaired the rim and replaced the cover, he examined the coal hole, its rim and covering, and found that it was "in a reasonably safe and good condition"; that he did not think "at that time that anything further was necessary to do about it to fix it any better"; that thereafter he had experienced walking over the lid himself, and that it did not even tilt or tip as he stepped on it; that he believed "it had to be struck in a peculiar way in order to make it tilt or tip"; that after the owner first repaired the coal hole by putting cement around it, up to the time of plaintiff's accident, no one had ever called attention to the fact that the coal hole was not safe or that there was something wrong with it; "we never had any inkling it wasn't safe". This officer of the Realty Company testified that the coal hole and the trap door to the stairs from the level of the sidewalk to the cellar of the building are within the six foot strip of land, and that the only purpose thereof was to put coal into the cellar and goods and articles of storage into the basement for the purposes of the tenants or of the building. This witness testified that he learned of plaintiff's accident on the day it happened and that he immediately called the coal company whose truck had damaged the rim of the coal hole, and had the coal company repair this rim at their expense.

There is some evidence in the record that sidewalk inspectors of the city of Youngstown, in making their inspection of the city streets and sidewalks were accustomed to observe anything near or close to the sidewalk which had the appearance of being in a dangerous or unsafe condition; and that these inspectors would notify the property owner and make a report to the city engineer's office, but no inspector testifies to having ever observed anything wrong with the coal hole in question.

Another officer of the Realty Company, called on behalf of the plaintiff, testified that at any time after the construction of the building the company would have been willing to give to the city a deed for the strip of ground between the north line of the street and the building line. This testimony, considered in connection with the testimony showing that the Realty Company continued at all times to use this strip of land for its own private purposes and to repair the coal hole rim when it became broken, negatives any actual or implied dedication by the owner to the city. The record distinctly shows that the Realty Company is and was a corporation and that neither its directors nor officers ever took any action indicative of an intention of dedicating the six foot strip of ground to the city, and there is no evidence of probative value in the record of any dedication of this six foot strip to the city, or that the city ever accepted any contemplated dedication thereof if such was the contemplation of the owner.

There is no evidence in the record from which the owner would be estopped from tearing up the concrete sidewalk on this six foot strip and sewing it down in grass or planting it with flowers, or using the

strip to display goods, wares or merchandise, or so as to prevent any use by the public for sidewalk or street purposes. The only restriction upon the use of the strip by the owner was that no permit could be obtained for the erection of a building thereon.

We find and hold from the evidence that at the time the respective motions for directed verdict were made by the ██ defendant no evidence had been offered at the trial from which reasonable minds could differ, but that reasonable minds would reasonably find that there never had been any dedication, either express or implied, of the strip of land in question to the city for street or sidewalk purposes, or for any other purpose.

Considerable argument, both oral and in brief, has been devoted by counsel on both sides to the question whether the city should have maintained a barrier at the edge of the fifteen foot public sidewalk so as to guard pedestrians against a known danger existing upon the privately owned six foot strip of ground. As hereinbefore stated, we think this was not an issue in this case, but it may be said, after a careful examination of the record, that there is no evidence sufficient to send this case to the jury upon the subject of a known danger in close proximity to the city's sidewalk, and that even though this issue was in the case, there was not evidence at the trial from which reasonable minds could differ but that reasonable minds must conclude that the condition of the coal hole in question was not apparent as being dangerous to persons lawfully using the public sidewalk. Two of the persons employed in the building adjacent to this coal hole testified to having seen broken parts of the rim of the coal hole in a loose condition after the same had been broken by the coal truck, but neither of these employes thought its condition such that it was necessary to notify anybody about it, not even the owner of the building whom they knew had the duty to repair the same.

It is the conclusion of this court that the motions of the defendant for directed verdict should have been sustained and that the trial court committed error prejudicial to the defendant in overruling these motions.

The accident to plaintiff is most regrettable, but we can not find any evidence in the record to support a finding of violation by the city of any duty imposed by §3714 GC, and this being the only section under which recovery could be had in any event against the city, it follows that substantial justice has not been done and this court must reverse the judgment of the Common Pleas Court and render the judgment which the trial court should have rendered upon the motions of defendant for directed verdict; and coming now to render such judgment as the trial court should have rendered, this court renders final judgment in favor of the city of Youngstown.

Judgment reversed and final judgment for defendant.

CARTER and ROBERTS, JJ, concur.