OPINION
{¶ 1} Plaintiffs-appellants, Matthew and Margaret Grabnic and Louis and Lisa Virost (collectively "appellants"), appeal the September 30, 2002 judgment entry of the Portage County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Brian and Michelle Doskocil and the City of Aurora (collectively "appellees"). For the reasons that follow, we affirm the decision of the court below.
 {¶ 2} The present case arises from a disputed interest in real estate located in the city of Aurora, Portage County, Ohio. On September 23, 1996, the Aurora City Council adopted Resolution 1996-153 approving the final plat and improvement plans for Centerville Woods Subdivision at State Route 306 and Crackle Road. As described in the plat, Centerville Woods would consist of fifteen single-family homes located on both sides of a road, Centerville Trail, running north-south and terminating in a cul-desac. The plat also includes an eighty-foot wide "roadway easement" running between Lots Nos. 12 and 11. The proposed "roadway easement" connects Centerville Trail with a fifteen-acre tract of land to the east of Centerville Woods, owned by Jack T. and Naomi B. Page. The plat states that the owners of the platted land, Bryon W. and Gail K. Heath, "grant unto the City of Aurora an 80 foot roadway easement, as shown for the purpose of future roadway" and that they "hereby dedicate and grant to public use forever the streets and easements shown on this plat." The plat for Centerville Woods was filed in the Portage County Recorder's office on October 17, 1997.
 {¶ 3} In April 1998, the Virosts purchased and took title to Lot No. 12. In January 1999, the Grabnics purchased and took title to Lot No. 11.
 {¶ 4} On August 9, 1999, the Aurora City Council adopted Ordinance 1999-204 granting a "thirty (30') foot ingress and egress, permanent right of way, and utility easement" to the Pages and "vacating the Centerville Woods eighty (80') foot roadway easement no longer needed for a public purpose." On September 21, 1999, a Deed of Easement expressing the substance of Ordinance 1999-204 was filed in the Portage County Recorder's office.
 {¶ 5} On September 20, 1999, the Pages sold ten acres of their property adjoining Centerville Woods to the Doskocils. The deed transferring the property provided, in part, that the Doskocils would have access to the property "over a 30' strip running north [sic] from Centerville Trail as stated in the deed of easement from the City of Aurora."[1] The Doskocils subsequently cleared this area and constructed a driveway over the easement to Centerville Trail.
 {¶ 6} On August 22, 2001, the Virosts and the Grabnics filed a complaint against the City of Aurora and the Doskocils seeking a declaratory judgment, writ of mandamus, equitable relief, and monetary damages on the claims of trespass and a taking of private property. The Virosts and the Grabnics moved for summary judgment, which the trial court denied on July 24, 2002. In its decision, the court held that, unless appellants could demonstrate a specific right, title, or interest in the roadway easement, Aurora had validly conveyed its interest in the roadway easement to the Pages pursuant to the authority granted under R.C. 723.121. The court concluded that appellants had failed to make such demonstration. Thereafter, appellees filed their own motion for summary judgment which the trial court granted on September 30, 2002, "for the reasons stated in this Court's July 24, 2002 Order and Journal Entry." This appeal timely follows.
 {¶ 7} Appellants raise the following assignments of error:
 {¶ 8} "[1.] The trial court erred in overruling Plaintiff-Appellants' motion for summary judgment.
 {¶ 9} "[2.] The trial court erred in granting Defendant-Appellees' motion for summary judgment."
 {¶ 10} Since the grounds for granting appellees' motion for summary judgment are the same grounds for overruling appellants' motion for summary judgment, both assignments of error will be addressed together.
 {¶ 11} As a preliminary matter, appellees argue that appellants have not timely appealed the trial court's decision overruling their motion for summary judgment and that, therefore, this court should not consider appellants' first assignment of error. We reject this specious argument. As appellees acknowledge, direct appeal of a denial of a motion for summary judgment is not a final appealable order. State, ex rel. Overmyerv. Walinski (1966), 8 Ohio St.2d 23. To accept appellees' argument would mean that an order denying a motion for summary judgment could never be subject to appellate review.[2] The Ohio Supreme Court has precluded the possibility of such a result by the following holding: "A trial court's denial of a motion for summary judgment is reviewable on appeal by the movant from a subsequent adverse final judgment." Balson v. Dodds
(1980), 62 Ohio St.2d 287, paragraph one of the syllabus.
 {¶ 12} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewed in a light most favorable to the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369-370, 1998-Ohio-389 (citation omitted). A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105,1996-Ohio-336. An appellate court also applies the de novo standard when it reviews a trial court's interpretation of a contract. Clem v.Steiner, 11th Dist. No. 2002-P-0056, 2003-Ohio-4865, at ¶ 15. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. Brown v. Cty. Commrs. of Scioto Cty. (1993),87 Ohio App.3d 704, 711 (citation omitted).
 {¶ 13} The first issue raised by appellants concerns the nature of the interest that Aurora acquired in the "roadway easement" upon the filing of the plat for Centerville Woods. According to appellants, by filing the plat, the Heaths and Aurora only intended to create an "easement interest" in the roadway, not any right of title or ownership. In support of this contention, appellants rely on the description of the proposed roadway in the plat and its subsequent treatment by Aurora as an "easement." Appellants then proceed to demonstrate that, under the common law, the Heaths and Aurora failed to create any property interest in Aurora in the proposed roadway.
 {¶ 14} The nature of Aurora's property interest in the proposed roadway linking Centerville Trail with the Pages' property depends on the manner in which Aurora acquired that interest. The two generally recognized ways that land becomes dedicated to a public purpose are "through either compliance with the applicable statutory law or under common law." Lundquist v. MRN Prop. Mgt. LLC, 3rd Dist. No. 9-03-12, 2003-Ohio-6007, at ¶ 11 (citations omitted); Dolan v. Parma, 8th Dist. No. 81183, 2003-Ohio-294, at ¶ 9 (citation omitted). Where the dedication of land meets the statutory requirements for vesting in a municipality, there is no need to address common law theories.Lundquist, 2003-Ohio-6007, at ¶ 11.
 {¶ 15} A developer who wishes to subdivide lots in a municipal corporation is required by R.C. 711.06 to "make an accurate plat of such subdivision, describing with certainty all grounds laid out or granted for streets, alleys, ways, commons, or other public uses. * * * Such plat shall be subscribed by the [developer] * * * and acknowledged before an officer authorized to take the acknowledgement of deeds * * * and such plat shall be recorded in the office of the county recorder." Prior to the recording of a plat of a proposed subdivision, the legislative authority of the municipal corporation must approve the plat. R.C. 711.08. "Upon recording, as required by section 711.06 of the Revised Code, the plat shall thereupon be a sufficient conveyance to vest in the municipal corporation the fee of the parcel of land designated or intended for streets, alleys, ways, common, or other public uses, to be held in the corporate name in trust to and for the uses and purposes set forth in the instrument." R.C. 711.07. The Ohio Supreme Court has recognized that, once a plat is approved and recorded, "the municipal corporation becomes the fee owner of the land designated in the approved plat as proposed public streets." Eggert v. Puleo (1993), 67 Ohio St.3d 78, 81, citingBayer v. N. College Hill (1986), 31 Ohio App.3d 208, 211 ("fee title to land dedicated to public use vests in the municipality upon recording of a properly acknowledged subdivision plat in the office of the county recorder").
 {¶ 16} In light of these statutes and precedent, Aurora's interest in the proposed roadway vested upon the recording of the plat with the county recorder. See Dundee Development Corp. v. Milford (Oct. 9, 1990), 12th Dist. No. CA90-02-014, 1990 Ohio App. LEXIS 4378, at *5-*8 (holding that a municipal corporation's interest in a proposed roadway vested upon approval and recording of the plat, despite the fact that the roadway had neither been improved nor accepted by the municipal corporation).[3]
 {¶ 17} The question then focuses on the nature of the interest or "fee" that Aurora acquired in the proposed roadway and whether Aurora could convey that interest to third parties. Appellants argue that this interest was "no more than the limited and conditional easement rights intended by the Developer and Aurora" and that Aurora lacked any authority to grant the Pages or Doskocils the right to use that easement for private purposes.
 {¶ 18} The nature of Aurora's interest in the proposed roadway and its right to alienate that interest are questions determined by recourse to the applicable statutes, just as Aurora's interest in the proposed roadway was created according to statute. A municipality's interest in a dedicated street is described as a "fee * * * to be held in the corporate name in trust to and for the uses and purposes set forth in the [recorded plat]." R.C. 711.07. The Ohio Supreme Court has held that a municipality acquires the interest of a "fee owner of the land designated in the approved plat as proposed public streets." Eggert, 67 Ohio St.3d at 81. This does not mean that a municipality possesses "a fee simple absolute in the streets, but only a determinable or qualified fee, [so] that what is granted to the city is to be held in trust for the uses intended."Callen v. Columbus Edison Elec. Light Co. (1902), 66 Ohio St. 166, 173;Kellogg v. Cincinnati Traction Co. (1909), 80 Ohio St. 331, 344 ("[t]he estate that is vested in the city is measured by the uses and purposes for which the dedication is intended").
 {¶ 19} Where the fee to a roadway resides in the public, "the lawful rights of the abutting owners are in their nature equitable easements."Callen, 66 Ohio St. at 174-175. The rights of abutting landowners include the right of reversion where the municipality vacates the whole or a portion of a public street. Kinnear Mfg. Co. v. Beatty (1901),65 Ohio St. 264, paragraph one of the syllabus ("[w]here a street or alley is vacated by a city, the vacated portion reverts to the abutting lot owners"). That right, however, is subject "to such rights as other property owners on the street * * * may have therein as a necessary means of access to their property." Id. This reversionary interest is codified as follows: "The order of a legislative authority of a municipal corporation vacating or narrowing of a street * * * which has been dedicated to public use * * * shall, to the extent which it is vacated or narrowed, operate as a revocation of the acceptance thereof by the legislative authority, but the right of way and easement therein of any lot owner shall not be impaired by such order." R.C. 723.08.
 {¶ 20} Having described the nature of Aurora's and the appellants' rights in the proposed roadway, we now turn to the issue of whether Aurora, pursuant to its rights, could convey a "ingress and egress, permanent right of way, and utility easement" along the proposed roadway to the Pages while vacating the remaining portions of the proposed roadway.
 {¶ 21} Concerning the conveyance of land by legislative authorities, the Revised Code provides as follows: "The legislative authority of any municipal corporation may convey the fee simple estate or any lesser estate or interest in, or permit the use of, for such period as it shall determine, any lands owned by such municipal corporation and acquired or used for * * * streets * * * provided that it shall determine * * * that the property or interest so to be conveyed or be permitted to be used is not needed by the municipal corporation for any such purposes. * * * With respect to any of such property not owned in fee simple by the municipal corporation, the legislative authority thereof may grant the right to use any portion thereof in perpetuity or for such period of time as it shall specify, * * * provided that it shall determine * * * that the property made subject to a permit to use is not needed by the municipal corporation for any such purposes." R.C. 723.121.
 {¶ 22} We find these provisions applicable to Aurora's conveyance of the easement in the proposed roadway to the Pages and their successors, the Doskocils. As described above, Aurora possessed a determinable fee in the proposed roadway. Aurora Ordinance 1999-204 states that the eighty foot "roadway easement" contained in the dedication plat is "no longer needed for a public purpose." The ordinance then grants to the Pages, abutting landowners to the proposed roadway, the right to use a portion of that roadway for a "single family driveway." The remainder of the roadway is vacated. In granting the Pages/Doskocils an easement for ingress and egress to their abutting property, Aurora has not exceeded the scope of its determinable fee in the roadway. The Doskocils' right to access their property by means of ingress and egress easement does not differ materially from the original purpose of the dedicated strip of land as a proposed roadway. Moreover, to maintain the dedicated strip of land as a public roadway no longer makes sense, since the only property that the roadway would access is the Doskocils' property. If Aurora were to improve and accept the proposed roadway, the result would be a dead end road leading up to a single street address. The road would be nothing more than a private drive maintained at the municipality's expense.
 {¶ 23} Finally, appellants rely on the following provision contained in R.C. 723.121 to argue that Aurora did not have authority to convey an easement interest in the proposed roadway: "No conveyance [or] easement * * * executed pursuant to the authorization given by this section shall prejudice any right, title, or interest in any lands affected thereby which * * * existed in any person * * * other than members of the general public having no specific rights in said lands, unless such right, title, or interest was expressly subject to the right of the municipal corporation to make such conveyance * * *." Appellants claim that the following rights would be prejudiced by Aurora's grant of the easement to the Pages/Doskocils: their property rights; their right to have the easement subject to the provisions of Aurora's codified ordinances governing the care and use of public streets; their right to petition for the vacation of a public easement.
 {¶ 24} We agree with the trial court that appellants have failed to articulate specific property rights in the proposed roadway that would be prejudiced by the granting of the easement. As discussed above, Aurora, not appellants, is the fee owner of the proposed roadway. Therefore, appellants' assertion that the creation of a private easement constitutes a taking of their property or a diminution of their property rights is unfounded. The "right" to have the easement subject to Aurora's municipal ordinances and the "right" to vacate the proposed roadway are not property rights as contemplated in R.C. 723.121.[4] In this respect, the trial court properly observed that standing to bring a lawsuit is different from a property right or interest. While a property owner may have standing to challenge a neighbor's violation of the zoning code, that fact does not create a property right in his neighbor's property.
 {¶ 25} In conclusion, we find that a determinable fee in the proposed roadway vested in Aurora upon the approval and recording of the plat for Centerville Woods subdivision. Appellants bought their property subject to the municipality's interest in the eighty foot roadway. Upon Aurora's vacation of fifty feet of the dedicated roadway, the Grabnics and the Virosts each received twenty-five feet of the vacated property pursuant to their reversionary interest in the proposed roadway. The Doskocils possess an easement interest in the remaining thirty foot strip for use as a single family driveway pursuant to the easement deed. The fee in this remaining strip of land abides in Aurora.
 {¶ 26} For the foregoing reasons, the decision of the Portage County Court of Common Pleas is affirmed.
Rice, J., concurs in judgment only, Ford, P.J., dissents with a Dissenting Opinion.
[1] The Pages' fifteen-acre parcel fronted Crackel Road, a public street outside the subdivision. The ten acres sold to the Doskocils were at the rear of the Pages' parcel. Without a right of access, either through the five acres retained by the Pages or through Centerville Woods, the Doskocils' property would be land-locked.
[2] The Ohio Supreme Court described the "Hobson's Choice" presented by appellees' argument as requiring the unsuccessful movant "to chooseeither trial on the merits without preserving for appellate review the trial court's alleged error on summary judgment or immediate appellate review of the trial court's alleged error on summary judgment without preserving her right to trial on the merits." Balson v. Dodds (1980),62 Ohio St.2d 287, 289.
[3] We emphasize that neither R.C. 711.06 nor R.C. 711.07 are concerned with what sort of proprietary interest a developer intends to convey to a municipality in a public street. R.C. 711.06 only requires the developer to describe, "with certainty all grounds laid out or granted for streets * * * or other public uses." If the plat designates land as intended for "streets * * * or other public uses," the municipality acquires a "fee" interest in the land upon recording. R.C. 711.07. Thus, R.C. 711.07 not only describes how a municipality's interest in land vests, it actually defines that interest. The public interest also requires that municipality's interest in its public streets be uniform rather than subject to the whim of the developer.
[4] We note that the easement deed provides that the driveway must be constructed and used in "conformance with the Codified Ordinances of the City of Aurora and general Ohio law."