OPINION
{¶ 1} The instant appeal has been taken from a final judgment of the Mahoning County Court of Common Pleas. Appellant, Robert L. Halstead, Trustee of the Robert L. Halstead Revocable Living Trust, seeks the reversal of the trial court's decision to *Page 2 
enter summary judgment against him as to his entire claim for a declaratory judgment. Upon reviewing the trial record and the respective arguments of the parties, this court holds that a partial reversal of the trial court's determination is warranted.
 {¶ 2} The subject matter of the underlying case pertains to the present ownership of a portion of Watt Street in the City of Youngstown, Ohio. As it was originally constructed, Watt Street ran essentially in a northerly direction from Federal Street to Wood Street. At some point in the 1990's, the southern path of the street was altered and a new curve was built so that the southern segment of the street intersected with Commerce Street, instead of Federal Street. As a result of this new configuration, a substantial portion of the old roadway for Watt Street was basically abandoned and not used for any traffic. After approximately ten years, the City of Youngstown enacted an ordinance which vacated a section of the abandoned roadway. At the present time, appellant owns a city lot which abuts the vacated section of Watt Street.
 {¶ 3} As part of the underlying case, the parties were able to stipulate concerning the authenticity of certain documents which showed the development of Watt Street and the surrounding parcels of land. These documents indicate that, as of 1830, the property which would eventually constitute Watt Street belonged to the Estate of John Longridge. By 1840, a survey of the northeastern section of the land in question showed the creation of an unnamed roadway between Federal Street and Wood Street. By 1860, a new survey established that the new roadway had been officially named "Watt" Street. At that time, the street was only thirty-three feet wide.
 {¶ 4} During the 1920's, the City of Youngstown began to take steps to widen Watt Street so that it could accommodate additional traffic. In furtherance of this *Page 3 
project, the City acquired a number of small tracts of land which abutted the eastern border of the original roadway. Although one of the tracts was dedicated to the City for the purpose of widening the roadway and creating a separate alleyway, the majority of the tracts were obtained through the appropriation of the land from the private owners of the abutting lots. For example, in July 1928, the City appropriated from the Realty Company and the Liebman Swaney Realty Company a parcel which was twenty-seven feet wide and approximately one hundred eighty-eight feet long. This process of acquiring new land and widening the roadway continued until the 1970's. By that point, the width of Watt Street had been increased to at least sixty feet throughout its entire path between Federal Street and Wood Street.
 {¶ 5} As was noted above, the City of Youngstown stopped using a segment of Watt Street when it constructed a new southern ending for the roadway in the early 1990's. After the "old" southern ending had lain dormant for ten years, the City became involved in negotiations with Ohio One Corporation to further develop the general area adjacent to the northern segment of Watt Street. As part of its plan to bring nearly two hundred new jobs to a local hospital, Ohio One Corporation indicated its desire to build a new parking lot in the vicinity of Watt Street. Ultimately, the City agreed to sell certain property to Ohio One Corporation which included a portion of the "abandoned" segment of Watt Street.
 {¶ 6} In July 2003, the Youngstown City Council passed Ordinance 03-128 for the sole purpose of vacating a segment of the "original" Watt Street under R.C. 723.05. Under the wording of the ordinance, the "vacated" portion essentially began at the edge of the new "curved" addition to the street and extended approximately one hundred *Page 4 
thirty-six feet down the abandoned roadway. This vacated area did not cover the entire original roadway which had extended to the intersection with Federal Street.
 {¶ 7} Approximately two months after the enactment of the ordinance, the City's Board of Control executed a quit claim deed under which it granted or sold certain property to Ohio One Corporation for the sum of one dollar. Included in this property was the part of the abandoned roadway which had previously been vacated. In addition to the deed, the City entered into a written agreement which gave Ohio One Corporation a license to use other municipal property. This land included a portion of the abandoned roadway which had not been vacated.
 {¶ 8} At the time the quit claim deed was signed, Youngstown City Lot No. 62182 was owned by Summit Securities, Inc., an Idaho corporation. This specific lot was located at the old intersection of Watt Street and Federal Street; as a result, the western border of the lot abutted the abandoned segment of Watt Street, including a significant portion of the area of the old roadway which had been vacated. In late November 2003, almost three months following the execution of the quit claim deed, Summit Securities sold its entire interest in the lot to appellant.
 {¶ 9} In June 2004, appellant initiated the underlying civil action against appellees, the City of Youngstown and Ohio One Corporation, Inc. As the basis for his sole claim for relief, appellant alleged that the purported conveyance of the vacated segment of Watt Street was legally void because the City did not have the authority to sell the land once the vacation had been completed. Specifically, appellant stated that, pursuant to R.C. 723.08, ownership of one-half of the vacated roadway had immediately become vested in Summit Securities when the City Council passed the "vacation" *Page 5 
ordinance. Moreover, the claim alleged that a taking of his property had occurred as a result of the installation of the parking lot, and that he had been deprived of any meaningful access to his basic lot. In light of this, appellant requested the issuance of a legal declaration that he was the owner of one-half of the vacated street and was entitled to damages based upon the taking of the land.
 {¶ 10} After the City and Ohio One Corporation had submitted their respective answers to the complaint, the parties filed their joint stipulation concerning the trial court's review of certain documents pertaining to their dispute. In essence, the parties stipulated as to the authenticity of forty-two documents which were attached to their submissions. The documents related to such matters as the chain of title to the various lots abutting Watt Street throughout its history, the manner in which the City had obtained the underlying land for the street, and the manner in which the City had conveyed the vacated roadway to Ohio One Corporation.
 {¶ 11} In light of the joint stipulation and the accompanying documents, the parties then submitted cross-motions for summary judgment. In his motion, appellant sought partial summary judgment on the limited issue of whether he was entitled to ownership of one-half of the vacated roadway under R.C. 723.08. In their respective motions, the City of Youngstown and Ohio One Corporation sought final judgment as to appellant's entire claim on the primary grounds that the statute did not apply in this instance because the land for the vacated roadway had not been dedicated by a private owner for that limited purpose.
 {¶ 12} The matter was referred to a court magistrate for consideration of the motions for summary judgment. Upon reviewing the stipulated documents and the *Page 6 
arguments of the three parties, the magistrate issued a three-page decision in which he concluded that the City of Youngstown and Ohio One Corporation were entitled to prevail on the final merits of appellant's declaratory judgment claim. As the basis for the judgment, the magistrate held that R.C. 723.08 was inapplicable to the instant case for two reasons. First, according to the magistrate, the stipulated documents did not show that any of the underlying land for the vacated roadway had ever been properly dedicated by a private owner for public use. Second, the documents demonstrated that the City had used its power of eminent domain to acquire the majority of the land upon which the roadway had been situated.
 {¶ 13} Within fourteen days of the issuance of the magistrate's decision, appellant filed written objections to his determination. In addition to contesting the magistrate's holding on the "dedication" issue, appellant asserted that, regardless of the manner in which the City had acquired the land for the vacated roadway, R.C. 723.08 still had the effect of depriving the City of any interest in the underlying land; based on this, appellant argued that the City simply did not have the basic ability to convey any interest to Ohio One Corporation. In the alternative, appellant also maintained that the City had not followed the proper statutory procedure for conveying municipal property.
 {¶ 14} Upon conducting an oral hearing on the matter, the trial court rendered its own judgment in which it overruled the objections and adopted the magistrate's decision. In setting forth its determination, the trial court did not provide any separate analysis of the issues raised by appellant; instead, the court merely quoted the entire discussion of the magistrate. In light of the magistrate's recommendation, the court *Page 7 
entered judgment for the City and Ohio One Corporation as to the entire complaint against them.
 {¶ 15} In now appealing the foregoing judgment, appellant has raised the following as error:
 {¶ 16} "[1.] The trial court erred by failing to declare the appellant to be the owner in fee title to the easterly one-half of Watt Street when the street was vacated by the City of Youngstown, Ohio.
 {¶ 17} "[2.] The trial court erred by failing to preserve the rights of access belonging to the appellant to cross the vacated portion of Watt Street in order to reach his property."
 {¶ 18} In his first assignment, appellant has submitted three separate arguments for our consideration. Under the first argument, appellant seeks to challenge the merits of the magistrate's analysis concerning the application of R.C. 723.08 to the facts of this case. As was noted above, the magistrate concluded that the statute should not be followed because: (1) there were no evidentiary materials establishing that the vacated roadway had been properly dedicated for public use; and (2) the materials did demonstrate that the land for the vacated roadway had been appropriated by the City. Under the first aspect of his argument, appellant asserts that one of the stipulated documents was sufficient to show the proper dedication of the original land for Watt Street.
 {¶ 19} In support of this particular point, appellant references a written statement of an estate trustee which was attached to an 1860 survey of the general area in question. A review of this document, which the parties labeled Exhibit 4 of their *Page 8 
stipulation, shows that it does refer to the location of certain "dedicated" streets in the area. However, our review also indicates that, although the survey lists Watt Street as an existing roadway at that time, the written statement of the trustees does not include Watt Street as one of the "dedicated" roads in the City. To that extent, this court holds that Exhibit 4 is not legally sufficient to establish the elements of a proper dedication of land for use as a public roadway.
 {¶ 20} In relation to the "dedication" point, this court would further note that appellant's present argument is different than the assertions which his counsel made to the trial court during the oral arguments on the objections to the magistrate's decision. At that time, counsel had indicated that he had been unable to locate any document from the 1800's in which the original owner of the subject land had expressly stated that he was dedicating the property to the municipality for use as a public roadway. Nevertheless, counsel still maintained that a proper dedication of the original thirty-three foot wide roadway could be inferred from the fact that the underlying land has always belonged to a private owner before Watt Street was first recognized on a survey of the area.
 {¶ 21} Even though counsel's argument before the trial court was somewhat logical, it was not consistent with the limited case law concerning the elements for the dedication of land under the common law. In Becker v. Youngtown (1936), 23 Ohio L. Abs. 466, this court stated that a proper dedication cannot be established unless specific evidence is presented showing both the intent of the private owner to dedicate the land and the municipality's actual acceptance of the land. Under this standard, the mere fact that a roadway came into existence at some point in time is not sufficient to *Page 9 
demonstrate a proper dedication of the land for public use as a street. Thus, since none of the parties' stipulated exhibits contained any indication that the original land for Watt Street was ever duly submitted and accepted for dedication, the magistrate and the trial court were correct in holding that the proper dedication of the roadway had never been proven.
 {¶ 22} As an aside, this court would again emphasize that, regardless of the manner in which the land for the original "thirty-three foot" portion of Watt Street was obtained, the stipulated documents readily showed that the additional land used to widen the vacated segment of the roadway was acquired solely through the process of appropriation. In addition, the documents showed that appellant's lot abuts only that side of the vacated segment situated on appropriated land. Under such circumstances, we fail to see how the fact that the original thirty-three feet of the roadway's width may have been acquired through dedication would be relevant to determining whether appellant is entitled to own one-half of the vacated segment. Stated differently, if his entitlement to the land does turn upon the exact manner in which it was obtained by the City, it is simply illogical that the alleged dedication of the original thirty-three feet would apply to him when he abuts the part of Watt Street which was taken through eminent domain.
 {¶ 23} Under the second aspect of his first argument, appellant alternatively asserts that the manner in which the City took possession of the subject property should not be the controlling factor in deciding if he now has an interest in one-half of the land. That is, he maintains that whenever a municipality vacates the status of any roadway as a public street, it does not retain any interest in the underlying land which it can convey *Page 10 
or sell to a private entity. According to appellant, regardless of the manner in which the land was initially acquired, the act of vacating the street's official status automatically causes the ownership of the land to go to the abutting property owners.
 {¶ 24} In support of this position, appellant relies upon two legal authorities. The first is R.C. 723.08, which expressly governs the effect of a municipality's decision to vacate a public street. This statute provides:
 {¶ 25} "The order of a legislative authority of a municipal corporation vacating or narrowing a street or alley which has been dedicated to public use by the proprietor thereof, shall, to the extent to which it is vacated or narrowed, operate as a revocation of the acceptance thereof by the legislative authority, but the right of way and easement therein of any lot owner shall not be impaired by such order."
 {¶ 26} In interpreting R.C. 723.08, the courts of this state have stated that the statute is simply a codification of the common law rule governing the rights of abutting property owners to public roadways. SeeGrabnic v. Doskocil, 11th Dist. No. 2002-P-0116, 2005-Ohio-2887, at ¶ 19. Under the common law rule, one of the rights of such owners was the right of reversion when the roadway was vacated by the municipality. Id., citing Kinnear Mfg. Co. v. Beatty (1901), 65 Ohio St. 264, paragraph one of the syllabus. Thus, R.C. 723.08 has been interpreted to grant an abutting property owner a one-half interest in a vacated street when the requirements of the statute have been satisfied.
 {¶ 27} The second authority cited by appellant is the Supreme Court's decision in Taylor v. Carpenter (1976), 45 Ohio St.2d 137. That case involved a dispute between multiple landowners as to who took title to the land of an alleyway after it had been *Page 11 
vacated by the city. One of the landowners asserted that she was entitled to all of the underlying land because a prior owner of her abutting property had been the individual who had originally dedicated the land for the alleyway. In response, the other landowners stated that since each of their properties also abutted the vacated roadway, they were entitled to one-half of the land which was directly adjacent to their property.
 {¶ 28} In upholding the trial court's decision that all of the landowners were entitled to one-half of the underlying land, theTaylor court expressly rejected the contention that the successor in title to the original dedicator of the alleyway had a superior interest in the land. Instead, the Supreme Court held that each of the abutting landowners had an identical interest in the land. As the basis for this holding, the Taylor court emphasized that this interest arose from the necessity that each abutting landowner have the ability to come and go from her respective property. At the end of its opinion, theTaylor court summarized its conclusion in the following manner:
 {¶ 29} "* * * Therefore, upon vacation of an alley by a city, abutting lot owners, as to that portion of the alley abutting their properties, are vested with a fee simple interest in one-half of the width of the strip of land which formerly comprised the alley, irrespective of the fact that the original owner and dedicator of the land was not the predecessor in title to all such abutting lot owners; subject, however, to those rights which other owners may have in the alley as a necessary means of access to their properties." Id. at 142-143.
 {¶ 30} Our review of the Taylor decision indicates that the fact that the underlying land had been dedicated by a private owner was not a controlling factor in the legal analysis; i.e., the Supreme Court never stated that its analysis of the parties' legal rights *Page 12 
would have been different if the subject land had been appropriated by the municipality. On the other hand, it cannot be disputed that theTaylor court never considered the issue of whether it would have reached a different conclusion if the subject land had been taken by appropriation, as compared to dedication. As to this point, we would further note that
 {¶ 31} Appellees have established that each of the prior cases cited in the Taylor opinion also involved situations where the underlying land had been dedicated. Similarly, we would note that the Supreme Court has not had an opportunity to consider whether the Taylor holding is applicable when the subject land was appropriated. Hence, for the foregoing reasons, this court rejects appellant's contention that theTaylor holding dictates the outcome in the instant matter.
 {¶ 32} In regard to R.C. 723.08, our review of that statute shows that it expressly limits its own application to the vacation of a street "which has been dedicated to public use by the proprietor thereof, * * *." Our review of Chapter 7 of the Revised Code further indicates that the Ohio Legislature has also given municipalities the legal power to appropriate land for use as a public street. See R.C. 719.01(A). Notwithstanding the fact that there are multiple ways in which a municipality may acquire real property, our state legislature chose to refer only to the dedication of land in R.C. 723.08. In light of the specific language in the statute, this court holds that it would be improper for us to expand the application of the statute to different methods for the acquisition of land for public purposes.
 {¶ 33} As to the foregoing point, we would also indicate that the prior versions of R.C. 723.08 contained wording virtually identical to the present version. In noting the *Page 13 
specific reference in the statute to streets which have been duly dedicated, the Eighth Appellate District has concluded that the statute should not be followed when the land for the street had been subject to appropriation. Bohm v. Kelly (1910), 17 Ohio C.C. 265, 1910 Ohio Misc. LEXIS 430. Despite the advanced age of the Bohm opinion, we still find its logic to be persuasive in light of the narrow language of the statute.
 {¶ 34} As a final point, this court would emphasize that the limited application of R.C. 723.08 could be explained by the difference in the nature of the interest obtained by a municipality through dedication as compared to appropriation. As a general proposition, a dedication has been defined as a voluntarily and intentional gift of land by the owner for a public purpose. Bentleyville v. Vince, 8th Dist. No. 87752,2006-Ohio-6275, at ¶ 25. In light of the facts that the municipality does not pay any funds in order to acquire the donated land, logic dictates that it should not be allowed to retain the land once it has been determined that the land should no longer be used as a public roadway.
 {¶ 35} In contrast, when real property has been acquired through the power of eminent domain, the municipality has had to pay the prior owner certain funds in order to obtain its interest. Accordingly, it has been held that when a proper use of the land existed at the time of the taking, a municipality has the latent ability to sell the property when the land can no longer serve that purpose. See State ex rel. Thomson v.Giessel (Wisc., 1953), 60 N.W.2d 873, 883.
 {¶ 36} In the instant case, our review of the parties' stipulated documents shows that, in regard to the portion of Watt Street which was vacated by the City Ordinance, there was no evidence indicating that any of the subject land had been dedicated for *Page 14 
purposes of the street. However, those documents do unequivocally show that, as to the vacated area, the City of Youngstown did obtain a fee simple interest when it appropriated the additional lands for the purpose of widening Watt Street. In light of such facts, this court holds that appellant was not entitled to one-half ownership of the vacated area abutting his property because R.C. 723.08 was inapplicable in this instance. Instead, the City retained the ability to sell the subject land notwithstanding the fact that a segment of the abandoned street had been vacated.
 {¶ 37} Pursuant to the foregoing analysis, the trial court did not err in concluding that appellees, the City of Youngstown and Ohio One Corporation, were entitled to summary judgment on the issue of whether appellant had any legal interest in the vacated area of Watt Street. Specifically, our review of the evidentiary materials demonstrates that: (1) there were no genuine issues of material fact remaining to be litigated in relation to that issue; (2) appellees were entitled to judgment as a matter of law on that issue; and (3) the state of the evidentiary materials were such that, even when they were construed in a manner most favorable to appellant, a reasonable person could only reach a final conclusion which is adverse to him. See Civ.R. 56(C). Therefore, the first argument under appellant's first assignment is without merit.
 {¶ 38} Under the second and third arguments of his first assignment, appellant argues that, once the City of Youngstown had passed the "vacation" ordinance, it failed to follow the proper procedure for conveying municipal property. Citing R.C. 723.121 and 721.03, appellant states that the City could not merely quit claim its interest in the area to Ohio One Corporation; instead, the City was required to follow specific steps which included a competitive bidding process for the vacated property. In light of this, *Page 15 
he states that, even if he cannot be declared the owner of part of the vacated area, the conveyance to Ohio One Corporation must still be declared void.
 {¶ 39} A review of the trial record indicates that appellant asserted his "procedural" arguments as part of his reply to the City's and Ohio One Corporation's respective motions for summary judgment. Despite this, the court magistrate never made a ruling on these particular points as part of his written decision. Similarly, the trial court's final judgment in the case did not contain any reference to the final merits of these particular points. Moreover, the trial court did not review the merits of the City's position that it was not required to follow the statutory procedure because its own City Charter had provisions governing the sale of municipal property.
 {¶ 40} In most instances, when a trial court has failed to render a decision on a pending motion or issue, this court typically presumes that the trial court implicitly made a ruling consistent with its final judgment; based upon this, the actual merits of the matter are then addressed. See Scott v. Falcon Transport Co., 7th Dist. No. 02 CA 145,2003-Ohio-6725, at ¶ 2. However, as will be discussed under appellant's second assignment of error, this court has concluded that the instant matter must be remanded to the trial court for further consideration of issues separate from whether appellant was entitled to own one-half of the vacated area. In light of this, we further conclude that, instead of following the Scott form of analysis, it would also be appropriate for the trial court to fully address appellant's "procedural" arguments pertaining to the validity of the conveyance to Ohio One Corporation. This requirement will be consistent with the general appellate proposition that a court of appeals should not address the merits of any issues until the trial court has had an opportunity to review such matters. *Page 16 
 {¶ 41} Therefore, as to appellant's first argument under his first assignment, we uphold the judgment of the trial court. Nevertheless, since a remand is warranted as to his second and third arguments, we ultimately conclude that his first assignment has merit to that extent.
 {¶ 42} Under his second assignment, appellant submits that the trial court erred in not rendering a determination as to whether he had a separate right to continuing access to his property across the vacated segment of Watt Street. Appellant contends that, even if he is not entitled to be declared the owner of one-half of the vacated area, Ohio law still requires that he be granted an easement so that he would have the same ability to access his land as he did prior to the act of vacation. In support of his position on this issue, appellant maintains that, even though he does have some access to his property from Federal Street, it is still incumbent that he be awarded separate access across the vacated street because certain trucks can only make deliveries to his building through the side of his property.
 {¶ 43} As was noted above, appellant specifically alleged in his complaint that the City's vacation of the segment of Watt Street had restricted his ability to gain access to his lot. In its motion for summary judgment, the City of Youngstown did not address this exact issue. In its separate motion, Ohio One Corporation did refer to the "access" issue in the final two sentences of its legal analysis. In also requesting final judgment on this issue, Ohio One Corporation merely argued that appellant should not be given separate access across the vacated area because he had always used Federal Street as his sole access to his property. However, in making this basic statement, Ohio One Corporation did not provide any legal analysis to support its position. More importantly, *Page 17 
it did not refer to any evidentiary materials supporting its factual assertion.
 {¶ 44} To prevail on a summary judgment motion, the moving party must be able to cite specific materials in the record which supports its factual argument. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. In this instance, both the City of Youngstown and Ohio One Corporation failed to carry their initial burden of presenting evidentiary materials pertaining to the "access" issue. Under such circumstances, it was improper for the trial court to grant summary judgment in favor of those two parties as to appellant's entire complaint. To this extent, appellant's second assignment of error is well taken.
 {¶ 45} Pursuant to the foregoing analysis, the trial court's determination on the application of R.C. 723.08 and the "dedication" issue is affirmed. In all other respects, the judgment of the trial court is reversed, and the action is hereby remanded to the trial court for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., Eleventh District Court of Appeals, sitting by assignment, COLLEEN MARY OTOOLE, J., Eleventh District Court of Appeals, sitting by assignment, concurs. *Page 1