[Cite as *Sherck v. Bremke*, 2012-Ohio-3527.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

KARL E. SHERCK, et al.

    Appellees

    v.

JOHN R. BREMKE, et al.

    Appellants

C.A. No.     11CA010078

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    10CV169023

DECISION AND JOURNAL ENTRY

Dated: August 6, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}  For a number of years, Karl and Connie Sherck accessed property that they owned by passing through land owned by John and Kimberly Bremke. When they began increasing the frequency with which they used the route, however, the Bremkes erected a fence to keep them off the Bremkes' property. The Shercks sued the Bremkes seeking a declaration that they have an easement to pass over the Bremkes' property. The Bremkes counterclaimed, requesting that the trial court enjoin the Shercks from entering their land. Following discovery, the Shercks moved for summary judgment and the Bremkes moved for partial summary judgment. The court granted judgment to the Shercks, concluding that, under Section 723.08 of the Ohio Revised Code, they have an easement over the part of the Bremkes' property that at one time had been dedicated to public use. The Bremkes have appealed, arguing that the court incorrectly granted the Shercks' motion for summary judgment and incorrectly denied the Bremkes' motion for

partial summary judgment. We reverse because the trial court incorrectly analyzed whether it was reasonably necessary for the Shercks to have an easement over the Bremkes' land under present conditions instead of the conditions that existed at the time that the City abandoned its interest in the land dedicated to public use.

BACKGROUND

{¶2} In March 1956, Charles and Martha Thomas submitted to Amherst a plat for approximately 22 acres of land in that city. In the plat, they "dedicate[d] to public use the following roads . . . Leavitt Road, Butternut Drive, Park Avenue, Edgewood Drive, and Fairlain Drive[.]" The plat was recorded on September 19, 1956.

{¶3} All of the roads proposed and dedicated in the plat were constructed except Fairlain Drive. The only part of Fairlain that was improved was a short section leading to the driveway of a lot on the corner of Butternut and Fairlain. That lot is now owned by the Bremkes.

{¶4} In 1981, the Shercks bought two lots along the unconstructed part of Fairlain Drive that were adjacent to the lot the Bremkes now own. The two lots bought by the Shercks also partially abutted property that they already owned along Park Avenue. According to the Shercks, after they purchased the lots, they constructed a garage on them to house and repair antique cars. They also planted a garden. The Shercks testified that, although the lots connect to their Park Avenue property, they have always accessed them by passing through the lot at the corner of Butternut and Fairlain. According to Mr. Sherck, there is not enough room to drive from their Park Avenue property to their other lots without damaging the house that is on the Park Avenue property.

{¶5} After the Shercks purchased the lots along Fairlain, they and several of the other property owners along the undeveloped road petitioned the City to vacate and remove Fairlain Drive from its list of dedicated streets. In 1982, the City passed an ordinance vacating the road.

{¶6} In 1999, the Bremkes purchased the lot at the corner of Butternut and Fairlain Drive. According to Mr. Bremke, after he purchased the lot, Mr. Sherck visited him to discuss the Shercks' access to their two lots along the vacated road. In his affidavit, Mr. Bremke asserted that he gave the Shercks a revocable license to continue using his property to drive their classic vehicles to and from the garage they had built. He revoked the license and constructed the fence, however, when he learned that they had begun using the route for other purposes.

VACATION OF STREET

{¶7} The Bremkes' first assignment of error is that the trial court incorrectly determined that Section 723.08 of the Ohio Revised Code applies to the facts of this case. Under Section 723.08, "[t]he order of a legislative authority of a municipal corporation vacating or narrowing a street or alley which has been dedicated to public use by the proprietor thereof, shall, to the extent to which it is vacated or narrowed, operate as a revocation of the acceptance thereof by the legislative authority, but the right of way and easement therein of any lot owner shall not be impaired by such order." According to the Bremkes, Section 723.08 only applies to streets that have been "accepted" by a municipality and there is a genuine issue of material fact regarding whether Amherst ever accepted Fairlain Drive. They have argued, therefore, that the trial court incorrectly determined on summary judgment that the Shercks have an easement pursuant to Section 723.08.

{¶8} Under Section 711.06 of the Ohio Revised Code, anyone who desires to subdivide lots in a municipal corporation "shall make an accurate plat of such subdivision." *Eggert v.*

*Puleo*, 67 Ohio St. 3d 78, 80 (1993) (quoting R.C. 711.06). "Th[e] plat must be subscribed and acknowledged, and 'shall be recorded in the office of the county recorder.'" *Id*. (quoting R.C. 711.06). "The method of approval varies depending upon the circumstances." *Id*. at 81. "Upon recording, . . . the plat shall thereupon be a sufficient conveyance to vest in the municipal corporation the fee of the parcel of land designated or intended for streets . . . or other public uses, to be held in the corporate name in trust to and for the uses and purposes set forth in the instrument." R.C. 711.07; *Eggert*, 67 Ohio St. 3d 78, at paragraph one of the syllabus. In this case, the parties agree that the Thomases' plat designated five streets for public use and that it was properly recorded. Under Section 711.07, upon recording, the City gained a vested fee interest in each of the five streets dedicated to public use in the plat. *Eggert*, 67 Ohio St. 3d 78, at paragraph one of the syllabus.

{¶9} After a municipality approves a proposed plat and allows it to be recorded, "the fee of land designated for public use passes, and the developer becomes bound to proceed according to the plan set forth in the approved and recorded plat. For example, the developer must construct the streets as they appear in the plat. However, the approval and recording of the plat also have important consequences for the municipal corporation. The municipal corporation itself becomes bound, in that it must be prepared to accept the street as a public street if the developer complies with the conditions imposed by the municipal corporation and satisfactorily builds the proposed street in accordance with the approved and recorded plat." *Eggert v. Puleo*, 67 Ohio St. 3d 78, 85 (1993).

{¶10} The Ohio Supreme Court has held that, if a municipality has a fee interest in a roadway, abutting land owners have an equitable easement to use the roadway. *Callen v. Columbus Edison Elec. Light Co.*, 66 Ohio St. 166, 174-75 (1902). Those abutting owners also

have a reversionary interest in the land should the city ever abandon it. *State, ex rel. Bedard v. Village of Lockbourne*, 69 Ohio App. 3d 452, 457 (10th Dist. 1990); *Grabnic v. Doskocil*, 11th Dist. No. 2002-P-0116, 2005-Ohio-2887, ¶ 19. "The rule is well established in Ohio that upon the vacation of a street the fee thereto does not revert to the original dedicator but accretes to the abutting-lot owners, subject only to such rights as other such owners may have in the street as a necessary means of access to their property." *Greenberg v. L. I. Snodgrass Co.*, 161 Ohio St. 351, 357 (1954); R.C. 723.08.

{¶11} The Bremkes have argued that the provision of Section 723.08 that preserves "the right of way and easement . . . of any lot owner" does not apply in this case because, according to them, Section 723.08 only applies to streets that were previously accepted by the City. Section 723.04 of the Ohio Revised Code specifically provides municipal corporations authority to vacate "a street or alley" in response to a petition by a person owning a lot in the vicinity of that street or alley.

{¶12} Most of the cases involving vacation of a street under Section 723.04 involve streets that were not only approved, but also accepted by a municipality. The distinction between a street dedicated to public use that has been approved and a street dedicated to public use that has been accepted is important. According to the Ohio Supreme Court, "[e]ven though the municipal corporation holds the fee of the land upon which the street is to be built upon approval and recording of the plat, the land is still in the care and control of the developer until the street is completed in accordance with specifications set forth in the plat. The proposed street does not become a public street until the street is accepted by the municipal corporation. It is at that point, upon acceptance, that the care, supervision, and control of the street become the responsibility of the municipal corporation. . . . Prior to acceptance by the municipal corporation,

the street is not a public street, but is only a proposed public street." *Eggert v. Puleo*, 67 Ohio St. 3d 78, 84 (1993).

{¶13}  There are two ways that an approved street can become an accepted street under the Ohio Revised Code.  First, a municipality can accept a street that has been dedicated to public use by ordinance.  R.C. 723.03.  Second, if the street is part of a plat and has been "constructed in accordance with the specifications set forth on the approved plat" and "is in good repair," the city engineer may put an "endorse[ment] on the approved plat" and the endorsement "shall constitute an acceptance of the street for public use."  R.C. 711.09.1.

{¶14}  In this case, the Shercks did not present uncontroverted evidence that the City accepted Fairlain Drive as a public street either by ordinance or endorsement.  The question, therefore, is whether a City can "vacate" a street that it has approved but not accepted or whether, alternatively, Section 723.04 applies only to accepted "public streets."

{¶15}  As previously noted, Section 723.03 of the Ohio Revised Code identifies one way in which a street that has been dedicated to public use becomes a "public street" that the municipality is required to maintain.  While Section 723.03 draws a distinction between "public streets" and other streets, Section 723.04 only uses the term "street."  Because use of Section 723.04 is not limited to "public streets," even though that phrase is used elsewhere in Chapter 723, we conclude that it applies to any street in which a municipality has a fee interest, not just "public streets" for which the municipality has accepted a duty of maintenance.

{¶16}  It is rational for a municipality to be able to vacate its interest in a street even though it has not accepted responsibility to maintain the street.  As explained earlier, a municipality receives a fee interest in a street dedicated to public use as soon as a plat is recorded.  R.C. 711.07.  This may be long before the street satisfies the conditions for

acceptance. *See* 711.09.1. Allowing a municipality to vacate its fee in a street before the street is accepted relieves the municipality of the possibility that it will in the future become responsible for the care, supervision, and control of the street. *See id.* (providing that a street is accepted when the city engineer endorses the plat). The vacation process under Section 723.04 provides municipalities with a clear procedure for giving up their title to streets that have been dedicated to public use.

{¶17} The language of Section 723.08 does not dictate a different result. Although Section 723.08 provides that an order vacating a road "operate[s] as a revocation of the acceptance [of the street]," that language merely explains one of the effects of vacating a street. That is, if the street is a public street, vacating the street operates as a revocation of the acceptance. Section 723.08 does not mean that the only streets that may be vacated are those that have been accepted by a municipality. R.C. 723.08.

{¶18} The Bremkes have cited *Halstead v. Ohio One Corp.*, 7th Dist. No. 06-MA-64, 2007-Ohio-1389, for the proposition that "a proper dedication [of a street] cannot be established unless specific evidence is presented showing both the intent of the private owner to dedicate the land and the municipality's actual acceptance of the land." *Id.* at ¶ 21. Noting that Section 723.08 only applies to streets that have been dedicated to public use, they have argued that it follows that Section 723.08 also only applies to streets that have been accepted. *Halstead*, however, did not involve platted land. If a street is not dedicated for public use as part of a plat under Chapter 711, the only way a municipality can gain a fee interest in the street is if "the dedication is accepted and confirmed by an ordinance specifically passed for such purpose." R.C. 723.03. In this case, however, the City obtained a fee interest in Fairlain Drive when the plat was recorded in 1956. The City did not have to accept the dedication to public use by

ordinance to gain title to the street as in *Halstead*. *Halstead*, 2007-Ohio-1389, at ¶ 21 (citing *Becker v. Youngstown*, 23 Ohio L. Abs. 466 (7th Dist. 1936)). Accordingly, we conclude that *Halstead* is distinguishable.

{¶19} Because Section 723.08 applies to any street that has been dedicated to public use, the trial court correctly concluded that Section 723.08 could apply to the facts of this case. The Bremkes' first assignment of error is overruled.

## REASONABLY NECESSARY

{¶20} The Bremkes' second assignment of error is that the trial court incorrectly granted summary judgment to the Shercks because a genuine issue of material fact exists regarding whether the Shercks have an easement in their property under Section 723.08 of the Ohio Revised Code. They have argued that questions of fact exist regarding whether it is reasonably necessary for the Shercks to use their property for ingress and egress when they own other land that abuts their Fairlain Drive property.

{¶21} Under Section 723.08, if a municipality vacates a street that has been dedicated to public use, the municipality's order does not impair "the right of way and easement" of other property owners. R.C. 723.08. In *Butzer v. Johns*, 67 Ohio App. 2d 41 (9th Dist. 1979), this Court explained that, "[if] a street is vacated and the land reverts to the abutting lot owners, certain rights to an easement may inhere in property owners whose land abuts the vacated area, if access to their own property is affected by the vacation." *Id*. at 42-43. In *Lord v. Wilson*, 9th Dist. No. 1354, 1985 WL 10675 (Apr. 10, 1985), we clarified that, "in determining whether [an] abutting landowner retains an easement in a vacated street . . . [t]he issue [is] whether continued access through the vacated street was reasonably necessary for [the lot owner] at the time the street was vacated." *Id*. at *2.

**{¶22}** In this case, the trial court determined that Mr. Sherck's affidavit and deposition testimony established the "expense, inconvenience, and impracticability of the Shercks utilizing another path" to access their lots. It, therefore, concluded that the Shercks retained an easement in the vacated part of Fairlain Drive. The problem with the court's decision is that it focused on the Shercks' present ability to access their lots instead of the conditions that existed at the time the City vacated the street. Accordingly, we vacate the trial court's decision and remand this case so that the court can review, in the first instance, whether there is a genuine issue of material fact regarding whether it was reasonably necessary for the Shercks to use the lot at the corner of Butternut and Fairlain to access their Fairlain Drive lots at the time that the City vacated Fairlain Drive. The Bremkes' second assignment of error is sustained.

WAIVER

**{¶23}** The Bremkes' third assignment of error is that the trial court incorrectly denied their motion for partial summary judgment regarding whether the Shercks have waived their right to claim an easement in their property. According to the Bremkes, the Shercks have planted trees within the area vacated by the City that interfere with the easements of the other owners of the lots along the vacated street. The Bremkes have argued that the Shercks may not claim an easement in their property if they have infringed on the easements of others. The trial court concluded that any actions that the Shercks have taken "on their own property cannot reasonably be construed as a waiver as they involve no act related to the easement existing over the Bremke property."

**{¶24}** As we explained in addressing the previous assignment of error, "in determining whether [an] abutting landowner retains an easement in a vacated street . . . [t]he issue [is] whether continued access through the vacated street was reasonably necessary for [the lot owner]

at the time the street was vacated." *Lord v. Wilson*, 9th Dist. No. 1354, 1985 WL 10675, * 2 (Apr. 10, 1985). Because whether the Shercks have an easement must be assessed based on the circumstances at the time the City vacated Fairlain Drive, actions that the Shercks took subsequent to its vacating the street are irrelevant. The Bremkes' third assignment of error is overruled.

LACHES

**{¶25}** The Bremkes' fourth assignment of error is that the trial court incorrectly denied their motion for partial summary judgment regarding whether the Shercks' claim is barred under the doctrine of laches. They have argued that the Shercks have done nothing to prevent the owners of the other lots along Fairlain Drive from planting trees and otherwise impeding the Shercks' access across the other owners' property.

**{¶26}** Laches is an equitable doctrine that is defined as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Perrine v. Perrine*, 9th Dist. No. 22472, 2005-Ohio-3634, ¶ 16 (quoting *Akron Gen. Med. Ctr. v. Foutty*, 9th Dist. No. 20152, 2001 WL 123466, *2 (Feb. 14, 2001)). "The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for such a delay, (3) knowledge—actual or constructive—of the injury or wrong, and (4) prejudice to the other party." *Martin Marietta Magnesia Specialties L.L.C. v. Pub. Util. Comm'n*, 129 Ohio St. 3d 485, 2011-Ohio-4189, ¶ 45.

**{¶27}** The issue in this case is whether the Shercks have an easement in the Bremkes' property. As the trial court noted, the Shercks filed their action only a couple of weeks after the Bremkes impeded their access to their lots. The trial court correctly determined that there was

no genuine issue of material fact that the Shercks did not unreasonably delay their assertion of their rights. The Bremkes' fourth assignment of error is overruled.

CONCLUSION

{¶28} The trial court correctly determined that the Shercks may have an easement in the Bremkes' land under Section 723.08 of the Ohio Revised Code. It looked at the wrong time period, however, when it analyzed whether it was reasonably necessary for the Shercks to have an easement in the Bremkes' land. The judgment of the Lorain County Common Pleas Court is reversed, and this matter is remanded for the trial court to determine, in the first instance, whether there is a genuine issue of material fact regarding whether it was reasonably necessary for the Shercks to access their Fairlain Drive lots via the Bremke property at the time the City vacated Fairlain Drive.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

_____

CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
BELFANCE, J.
CONCUR.


APPEARANCES:

JEFFREY H. WEIR, II and JOSHUA E. LAMB, Attorneys at Law, for Appellants.

HOWARD T. LANE, and JAMES R. WHITE, Attorneys at Law, for Appellees.